on your honor Carlo Brooke for appellant Charleston Dacoff. Before you begin I've got a question though this is Judge Baldock. Is the remand that was sent by the Ninth Circuit back to the board and they remanded to the IJ is that still pending? No your honor in fact that remand led to eventually remand back to the immigration court where removal proceedings resumed and now the question is counsel is it still pending or is it over? That particular appeal is over your honor. So there's so the IJ found that there was made no difference at all he would still claim that because of the DUI that he was a danger and kept keeping locked up. So during the pendency of the remanded proceedings the IJ continued to find Mr. Dacoff to be a danger to the community based on the same findings. Okay that that resolved. Thank you. So the remanded proceedings resulted in a new order of removal. The removal order is not final the appeal is currently pending at the board and it's been pending for some time actually. The answer to Judge Baldock's question is that it isn't finished. It's not done at the agency. That is correct except that we're now on appeal number two. A different appeal of a appealing an earlier set of refusals. Right now the court is referring to the the removal proceedings correct not the habeas proceedings. That what was remanded? Yes. All right so that so we're doing with the habeas proceedings about the bail hearings and that deals with the removal question. Yes your honor. What's this? Mr. Dacoff at the moment is not detained is that correct? Correct he was released on a TRO in one of the multi petitioner habeas suits that were filed after COVID-19. How did it come about that he was the subject of a petition before another judge? With the outbreak of COVID-19 and the recognition that it was likely to spread in the immigration detention facilities a certain number of petitioners began filing suits based on the conditions of confinement. But if he filed another habeas why didn't it go back to Judge Hatter? I don't understand it. It kind of went off on a separate track and and this is what now when we've got multiple pieces of this floating around. Yeah and what what's happening with habeas litigation and COVID-19 is very interesting and complex. To try to summarize it very briefly there was an initial habeas petition that went to Judge Hatter and following that all of the habeas petitions that are essentially making substantive due process claims were assigned to Judge Hatter and the particular petition under which Mr. released is a multi petitioner habeas petition. Has the government appealed that release order from Judge Hatter? That's a complicated question. It's complicated because after the multi petitioner habeas petitions the court stated it would no longer review multi petitioner petitions but that the potential class members could file a class action lawsuit which it did also with the ACLU and so the preliminary injunction in that case is currently stayed and then a lot of other proceedings are happening in parallel. But my question is is there another case is there another case in this court that is reviewing his detention? Not at the moment. Okay. He was released under a TRO which presumably has expired and as you are describing it there is no existing preliminary injunction or injunction or anything that is keeping him out but the government is not trying to get him back now. Is that the short version? Except for the the last part and that's really the issue here is that he may be released on a TRO. But a TRO expires it must have until further order of the court. But it's not a TRO, it's a preliminary injunction. So they could have appealed it. Have they appealed that? The reason this all matters is I understand they've withdrawn their motion but it seems to me that we are somewhat spinning wheels if we are trying to decide whether he should be released by according to the set of detention hearings if he is in fact released but more importantly it seems to me that when he if he is in fact reincarcerated or retained there's gonna be a complete change in circumstances based on whatever happened while he was out because there's a bunch of predictions being made about how he's gonna behave when he's out and he's now out so I assume you're gonna go running back immediately and say well look what happened he was out he was incredibly well behaved he didn't drink anything he went to all his possessions. I don't know if he did. Or I'll say the opposite. While he was out he was driving without a license and getting drunk and that just proves it all but it's gonna be a whole different set of facts. Well I think your honor makes an excellent point in that while Mr. Daycock was continuously detained he was effectively and this goes for anybody in the immigration detention unable to show material circumstances. Now he can. So to me that's sort of the mootness. I mean he will be able to change circumstances. The government will be able to refute it. We can have some actual on the ground facts about how he's going to behave when he's not detained. So instead of all the speculations we have facts. Well what's not speculation your honor is that the government there's nothing preventing the government from detaining Mr. Daycock anew and that's why the courts have found that's true. Are they going to be able to detain him anew based on the existing detention determinations that he should stay detained even though the circumstances have changed? I'm sorry I missed the very first part of it. By the way are they going to be able to detain him anew and have him remain detained on the order that we're now reviewing? So the government under the statute would be free to detain him anew based on this record. But you can ask for a change of circumstances your honor. It now stands under Regas as long as it's still alive. Except that and in fact this is I believe what I see as the key issue in this case. What this case illustrates if ever there was one is that the sort of potential to have a bond hearing and even the number of bond hearings that a civil detainee receives is no guarantee of the adequacy of the proceedings. So that's what you just said is an important point. So what what exactly is the additional constitutional protection that you say the Due Process Clause requires beyond having the periodic hearings and opportunity to be heard etc. What exactly is it and where does it come from? So it comes from the line of cases that this court has referred to as having dealt with in a piecemeal fashion. I believe that's the word that the court used in Aleman starting with Casas, then Singh, then Diop, then Rodriguez etc. In which the courts found that the agency's procedures were inadequate and furthermore found that not only is the civil detainee entitled and that's the word that is used in Casas to a procedurally adequate bond hearing but in Singh the court added specifically and these words and the standard was not chosen haphazardly. That the government must choose, sorry, must prove by clear and convincing evidence that the civil detainee either poses a danger to the United States community or is a flight risk. That's a high standard. Challenging that standard and the question of whether it shall remain in effect is pending before a different district court and then presumably we'll go to a different path, right? What, so among the issues in this appeal, and this is really addressed in the Ramos case which comes from the Northern District, is whether it's enough to simply announce the standard, write it in the bond memorandum or whether the immigration judge must apply the standard correctly and that really is... But now that question, whether the standard is applied correctly, that seems to go straight to what Congress has said we do not have jurisdiction over in the statute which is the weighing of the discretionary judgment. So once we have all the procedures in place and we have the standards, the substantive application, are you saying that the statute is unconstitutional or the constitution requires that we do a substantive review of the weighing of the factors? No, your honor, and I'm glad that you raised this issue because it does come up a lot. This has nothing to do with weighing. It's not a matter of second guessing how much weight and the way in which the immigration... But you asked, you said that we get to review whether or not, and the constitution requires that we review whether or not the immigration judge applied all these standards correctly. That seems precisely what the statute says we cannot do. Now, how do you put those two together? Is the statute unconstitutional? No, it's not unconstitutional. In fact, as the Supreme Court recently stated in the LaSparilla case, which granted is related to a different set of statutes, but it said that the application of the legal standard to undisputed or established fact is a question of law. And that's precisely appellant argument here. And if I'm reading it correctly, that's the court's reasoning. It was about... The Ramos case. Two seconds, so... I'm sorry, your honor. On the immediate assumption that we do have some kind of jurisdiction here over whatever it is you're raising, could you give us a distinct argument as to why the IJ and BIA's conclusions with regard to immigration's dangerousness are essentially above our standard? Are we reviewing it de novo? Is that your belief? Yes, your honor. What are we doing? The fact-finding could be reviewed for clear error, but the application should be reviewed de novo. Is it a conclusion that he composes a danger, a fact, or a legal conclusion? It's a legal conclusion, and it is a long case, and the proceedings were very long. In fact, the habeas proceedings took eight months in and of themselves. In a nutshell, what we see here is essentially the IJ using the same language to characterize Mr. Dacos' alleged dangerousness from the very first bond memorandum to the last bond memorandum. Counsel, let me interrupt here, because you've just gotten to the point where I'm saying you're trying to whipsaw this court. Because you've got an IJ who has said, No, I'm going to keep you locked up because of your DUI. You've got that on the field. If the board reverses that, gives him the remedy that turns him out, that resolves the constitutional question that you're here before us. So why should we even begin to answer your question until we see what the board does in that proceedings? Because if they grant that, then that takes away your constitutional question. Okay, I think I understand Your Honor's earlier question now. The Dacoff appealed from every single IJ bond denial to the Board of Immigration Appeals, and all of the appeals— And that's still pending. No. No, you just answered earlier to Judge Bryce that that appeal was still— that he had appealed from the IJ, and it was with the board now. I thought that Your Honor was referring to the removal proceedings, because that's the only remand that has occurred in this case. There has been no remand on custody or habeas. So I'm sorry if I inadvertently created some confusion. I thought there was some reference in district court habeas proceedings to another detention hearing after the one that you're currently appealing, in which you said something or somebody said something like, I've just received notice that the IJ or the BIA denied the last request or something like that. Correct. There was a fourth bond hearing in which the IJ— No, it was another, not this one. Correct. That was the July— There was another one. There was another one after the one that we're now reviewing. There was yet another one, yes, the July 10th, 2019. Right. So there was another one. Has that one been appealed? Has that one been the subject of habeas? That one happened after the judgment from the district court. Yes or no. I'm asking you whether that one was the subject of a habeas, either this one or another habeas. No, I suppose it could be, but it's a carbon copy of all of the other decisions. Essentially, the IJ decided that, as she puts it, the crime of DUI is extremely dangerous, and apparently in the IJ's view— But it's not before us, and it's not, in terms of Judge Baldock's question, it's not coming to a district court or our court again. Not for now, no. So the only thing that's—the only overlap is between the removal proceedings. Correct. Your time is up. I'll give you some time to look up. When you say not for now, does that mean that there is a possibility it's going to come back before the court? There's always a possibility that a petitioner can file another habeas petition if the first one is denied without prejudice, but there's no other petition in the offing. Okay. Your time is up. Thank you very much. Ms. Molina. Good morning, Your Honor. May you please support— Why it is that the Justice Department lawyers are appearing by phone and not by video? This is my personal— It's a pattern, and I want to know why that is. I'm sorry, Your Honor. I do apologize for— I would like to know why the Justice Department lawyers are appearing by phone and not by video. Yes. Can you hear me now? I can hear you fine, but I'm just curious because it's a pattern, and this is the fourth or fifth one that I've seen, and almost nobody else is doing it, and I'm just curious about why, because it's not the best. Yes, I do apologize, Your Honor, for—I'm not—I wasn't aware that my colleagues were regarding the logistics and the family setup in my house and my inability— What's odd is that it seems to be a personal circumstance for almost every DOJ lawyer that I've encountered, and I don't understand it. Your Honor, I understand your concerns, and I will definitely pass them on to leadership. Oh, okay. Go ahead. Okay. Thank you, and I would like to begin by acknowledging that, what this court said, there are multiple pieces floating around that try to provide some clarity as to those— What's the status of the Judge Hatterr order with respect to Mr. Daycoff? Is it in effect? Is it on appeal? Is he not—is he subject to being picked up today? What's his status vis-a-vis that, Judge Hatterr's orders? So it's still in effect today, but to complicate things a little bit more, Mr. Daycoff is also a member of the Fry Hut and the Roman classes of the future Adelanto detainees that are before this court. So the way I like to frame it is that there are three trains in this affecting this particular issue before this court now, and at this moment in time, there is no live case or controversy because Mr. Daycoff is outside of detention. However, because these other appeals— We withdrew this motion because there is a possibility, there's a sliver of time—because this case has to be looked at through a time continuum—because on train one, Mr. Daycoff's BIA, there could be a moment in time where Fry Hut and Roman and Judge Hatterr's PI now can all be found in favor of—not in favor of the government, and the BIA case is still not decided, and Mr. Daycoff can be picked up and still be subject to 1226C, and at that small sliver of time, he presumably may be able to continue with this appeal. However, that is— Well, I'm very—let me interrupt. I'm very confused. So is he currently out on a preliminary injunction from Judge Hatterr? Correct. He was released on a TRO that has not expired based on the COVID findings of the Adelanto Detention Center. And have you appealed that? Have you appealed the order allowing his release? That is—yes, and that is currently pending. And Mr. Daycoff— Oh, you have appealed it? Correct. Okay. So that is the reason— Pending in court on a motion or what? I'm sorry? Pending in this court on a motion? No, it's a—I believe it's— Pending as in a no preliminary injunction? The preliminary injunction is pending in C.D. Cal, but there's also appeals that affect Mr. Daycoff in the Roman and the Fryhat cases. So the answer to Ms. Thomas' questions with regard to Judge Hatterr's order is there is no appeal pending. Is that correct or not? I believe that's the Roman case. Is there an appeal currently pending in this court for the order that actually resulted in his release? Yes, not in—I don't think in this court yet. I think that litigation is still going in C.D. Cal, Your Honor. And I can provide a clear answer. Well, but, you know, but now if the order is there and it's not been appealed, I mean, I understand you may get to a point in the merits where his status may change. But we have an appeal from a bond, you know, which is temporarily—obviously a temporary arrangement that he didn't get bond. And now he has temporary freedom from detention, which seems indefinite. I don't understand now why there's a case of controversy left here. The government agrees that at this moment in time, there is no case of controversy here. But because there are those appeals pending— So why did you withdraw—why did you withdraw the motion? If there's no—if you don't actually have something trying to put him back in custody and undo the separate order that released him, that would have prevented this case from being moved, but you don't seem to have that. With, you know, with all these parallel cases regarding the COVID litigation and the continuum of possible results that may come from the BIA's order on the merits, there is still that sliver of time where he could be subject to 1226A again. Well, he is—what you're talking about, the BIA's order, is that he would then be detainable under a different subsection of the INA. Is that right? It could be, and that—it could be. So if the BIA denies the order— It could still be moved, because this case is about his detention under the removal provisions rather than the post-removal provisions. That is correct, Your Honor. That is correct. So— Well, it's about that, but that doesn't seem to be an example of when it would not be moved, because it's a different case at that point. It's not this case. Correct. And, but, again, what I'm trying to— It seems to me that if he is re-detained now as a pre-removal person at some point when, you know, if the coronavirus ever lets up or if you ever get some order—appeal the relevant order, which you haven't, I still think it's a different case, because at that point, it seems to me he has a pretty good argument of strength to change circumstances, because now we know how he's actually behaving when he's out. That is correct, Your Honor. The circumstances would change. As you pointed out, he would be able to point out to his conduct during his release and argue that— No, can you create that point that there was a changed circumstance on that issue that I'm not hearing? Yes, that could be a changed circumstance that would merit another hearing, but to throw a to be re-detained today, in addition to having that hearing again or the changed circumstance, he would also get a FRAHOT custody redetermination pursuant to the preliminary injunction that is currently in place in FRAHOT. So that would be another case. The government does agree with the court in that sense. One minute, please. Yes, so there's been further development in the COVID litigation relating to the Adelanto ICE facility since this case was last— Since there was any violence in this case. So I'm 100% thoroughly confused, Your Honor, as to what it is that could possibly be keeping this case alive right now. There's only a slight possibility that this case may be kept alive, and the only thing would be if several cases align and Mr. Daycoff is picked up. So several things that must happen at the same time in order for Mr. Daycoff to keep this case alive. But even if that happens, even if that happens, he would need a new bond hearing because the circumstances would be totally different, and then that would get reviewed. This order is just gone because he got released from custody, and you didn't challenge that order. That would have made this order then come back. That is correct, Your Honor. And, you know, traditionally the government's position, and then this court's position too, has been that when somebody's released on habeas and there's an appeal that the case falls through, but in this very specific circumstances related to COVID and the different case, the government does agree with the court now. Since he's released under Judge Hatter's order, and that one hasn't been appealed, the fact that there are other orders under which he also would have to be released, and those aren't appealed, wouldn't seem to matter because he was released under Judge Hatter's order, and that one hasn't been appealed. Is that correct? Judge, but he became part of a class that was appealed. He became... That's fine, but he was already released by this order, so what's your resistance? Right, I mean, there's none. Looking at it through that point, the case is moot, so, but to the extent that he still falls under all the other orders, then there is that possibility whenever all those other circumstances allow. I mean, it seems to me the most sensible thing to do is for us, actually, to just stay this appeal. And if it ever becomes relevant again, because it's very unlikely to, but maybe, I don't know, you seem to think maybe it could. I want to hear what Mr. Brooks has to say, but for us to go dealing with this, I mean, it's also true conversely. I mean, the fact that we, then, if we decided that the basis for denying him release at the time he was denied release was inappropriate, if he goes and drunk drives tomorrow, he can still get picked up and be released. And on the other hand, you know, you both seem to think that maybe there's something or other that would get him back in under the current detention order. I don't know whether that's true. The government, yeah, the government agrees with the court, Your Honor, and definitely we would request that, also in the alternative, that this court hold this appeal in abeyance pending the Roman and Fryhat class certifications. And the government can offer the court to give periodic updates as to the status of both Mr. Daycoff's detention status and the status of the other litigation that impacts this case. Do you want to briefly address the merits of the case that may not exist or not? Sure, if the court would allow me an opportunity. This is a this is a Mr. Daycoff is frustrated with the bond review process because it did not favor him. But the process for the custody redetermination for aliens under 1226 is valid and fair. This court is being asked to determine whether it's valid and fair. My understanding is that we are operating under the Rodriguez Conjunction. What's the status of that case? I'm sorry, Your Honor, I didn't hear the part of that question. What is the status of the Rodriguez remand? That is pending in the district court as to whether there's still a constitution, whether the standards are constitutional, as opposed to violate the statute. Is that right? That is correct. That is still pending in the Central District of California. So in regards to whether there's any constitutional question for this panel to solve, there's not because he's part of that class and he cannot opt out. That's still pending. Why are you telling us about the validity or invalidity of the procedures? What we need to do is apply the procedures under the injunction. Is that not correct? So let me backtrack and take that back and just go to the very narrow merits of this case. The judge's decision, the immigration judge's decision, was a discretionary decision. And the record is replete with evidence of how the judge weighed all the factors, both the negative factors that the government presented, including the prior convictions of DUI and the circumstances of the DUI, with the positive factors that Mr. Daycoff presented, including his long history in the United States, his long-term marriage to a U.S. citizen wife, and all of the other positive factors. But at the end of the day, the immigration judge assigned weight to each of the factors and concluded that the DUI, along with the circumstances surrounding the DUI, including his failed rehabilitation efforts and the timing of So to the extent that is being reviewed, that is the definition of a discretionary decision or weighing of the factors, that is precluded by 1226E. So the government maintains that... On top of that, one of the arguments that's made is that they didn't take into account that you had specific and definite plans made with regard to not only, as I understand it, a new rehabilitation program into which he was accepted, but also a supervised place to live while he was undergoing that program, and that that wasn't mentioned in the IJ or BIA things. Is that right? That is... I believe those were raised in the hearing after the hearing that is being appealed now. As the court noted, he did have a hearing after that, and that is when he submitted the Greenleaf Sober Program, and at that time, a second immigration judge did not find that those... that that note that he submitted warrants that a change in circumstance as to release him because the evidence that he submitted was insufficiently detailed for him to really have the 2018 order that is being reviewed by this court. So in total, Mr. Dacuff has had four bond hearings, and two of them have been in appeal, and the result has been the same, and his quibble is with the weight that those decision makers have assigned to the evidence that has provided... that was provided. And his other... I don't think it's quibble. His other argument is that he's been detained for an exceedingly abnormally long time at this point, and that that ought to factor in somehow to the analysis. Yes, so the immigration judge was aware of the time that he had been in the hearing and the transcripts, but duration alone does not violate due process where an individual has received the procedural protections in the form of regular bond hearings. The duration of detention is not a factor that the judge should take into consideration under the BIA precedent in the matter of GERA, which delineates the factors that the bond... that the immigration judges should consider. And to the extent that... But it seems relevant to a due process analysis, which is where we are now, you know, how strong his interest is. Therefore, what kinds of procedures are needed to protect them? There's no... in terms of the due process, he's received... he's received the bond hearings. He's received the opportunity to review those bond hearings by the BIA and the district court. And because he has the ability to file a different, and as he has, file for a different redetermination hearing anytime there's changed circumstances, there's really not a due process concern. Except that one of the due process circumstances... one of the changed circumstances is not how long he's been there. Correct. So, it's not going to be... that is something that he has... that is not a factor. There's no rule, there's no case law, and I know the Third Circuit and Board Vote, the warden, addressed this issue. And they found that duration alone is not a factor in the due process consideration. Vis-a-vis the fact that he's had and continues to have the opportunities to have a hearing, present any changed circumstances, and have those being reviewed by the BIA. All right. Thank you very much. Your time is up. Ms. Brooks, you have, let's say, two minutes, but you may go longer because we would really like to hear your views on these various things. I wouldn't, I think, on this issue at this point. I can't hear you. You're muted. Sorry about that. Thank you, Your Honor. I appreciate the latitude. Very quickly, with respect to what seems to be a mootness issue that's being raised, that was briefed thoroughly in our April opposition to the motion to dismiss. There's very clear case law on this. Essentially, the habeas case only becomes moot if there are assurances that the detainee won't be detained anew. There are no such assurances. Right now, there's an unappealed injunction. Is that right? The appeal, the injunction that released him has not been appealed. Right. And so I know that there's a lot of procedural stuff going on right now, and I don't want to use up all my time. I will say this to try to clarify. The class action lawsuit, Roman Hernandez, basically has stayed all of the other COVID-related, either individual or multi-petitioner habeas cases. So the short answer is that they're all stayed. So why shouldn't we stay this appeal? That's my only question. I'll put it this way. If it becomes a lie, we can worry about it, but it doesn't look like it. Number one, right now, there's... Sorry? A stay could possibly be permissible, provided that it prevents the agency from Mr. Daycock. I can tell you from experience, and I have an appeal actually pending at this court on this issue, that it takes very little for the agency to decide to re-detain an immigration detainee. And in fact, there's no sort of transparent process for that. Well, if he were picked up again, then wouldn't he get another bond hearing at that point? So thank you, Your Honor. That brings me to the more substantive point that was just raised by the government. This is an extremely important issue, this issue of changed circumstances. I'll just ask a yes or no question. Would he get another bond hearing if he were picked up again? Procedurally? It's actually hard to say. I had a client that was re-detained, and we actually had to fight to get him a bond hearing. Number two, because the length of the detention and the remoteness in time of the allegedly dangerous conduct is not taken into consideration, it's extremely problematical, because unlike in, for example, the prison system, there is no parole process in place. There is no sort of point system. There is no opportunity to show rehabilitation. There are no programs. And so essentially, the conduct that troubles the immigration judge is as though it were etched in stone and based on misdemeanor vehicle code. For example, in the criminal system, if somebody is released, and as I understand it, is unsupervised release, or say somebody is released or is not detained during an appeal, and then you go back to re-sentencing, the behavior during the period that he's out is relevant behavior. And I would think it would be relevant here as well. That's an extremely important... In those corrections. That's precisely the point I'm making, Your Honor, is that the immigration courts were not designed, and they're not set up to deal with these sorts of issues. The criminal justice system is what deals with criminal behavior, and that's why the immigration court should show deference to the criminal court. When the criminal court sentences somebody to probation, then they've assessed that person's dangerousness and punished them accordingly. And so to transform a period of probation into the equivalent of a felony prison sentence is... I don't have words for it. It's unconstitutional. It should shock the conscience. And this case is the illustration of that. Okay. Thank you both. And the case, the Dreyfus case is submitted, and you will go to the last case of the day. Thank you, Your Honor. Liberty City U.D. v. U.S. Patent. Thank you very much.
judges: Baldock, Berzon, Collins